All right, our final case of this morning is Harper v. C.R. England, number 17-4008. Counsel, you may proceed. I'm not used to this dry. You may please support Brian Van Vleck on behalf of the appellant and objectors. The first and foremost reason that the settlement, the class action settlement below cannot stand, the approval cannot stand, is because we can't even say on the record that exists that the class is receiving any benefit from the settlement whatsoever. And by that I'm referring to what's discussed in our papers, the safe harbor provision that was under, and this is a case under California law, where California, of course, had this one-time opportunity to basically pay up a certain type of back wages for peace rate compensation plans and rest periods. And by virtue of doing that, the employer would receive, you know, again, safe harbor, avoid penalties, interest, other things associated with those back wages. The premise, the whole premise of the settlement here, and one of the reasons that it seems to have been, you know, rushed with a great deal of haste to get it through by that December 15th deadline, is because the parties had agreed that the safe harbor payments that were scheduled to be made, this has been represented, was represented below, that these were scheduled and set to be made to the class, that these were going to be basically folded into the consideration for the settlement, which would include a great deal more than the minimum wage and rest period issues that would be covered by the safe harbor payments. Does it matter that that didn't happen? That the safe harbor payments did not happen? Uh-huh. Well, it does in the sense that that's money that the class would have received, but for the settlement. And therefore, it's impossible to say whether they would have been better off if the court had, you know, simply rejected the settlement and allowed those safe harbor payments to go forward. Could you maybe elaborate a little bit on that? But let me just mention, make a comment and see what your reaction is. Does it make a difference to a class member whether that class member receives the payment as a safe harbor payment, or receives it as a settlement payment? Money is fungible and they're going to get it anyway. So what is your argument, that they would have gotten more from the safe harbor payments than the settlement payment? Well, fair enough. I mean, a dollar is a dollar. It's in the pockets of the class, and that's true. But that's just exactly it. We don't know what those safe harbor payments were going to be. I can't say whether they would get more or less. Neither could the court, and neither could class counsel. There was an estimate, though, right? Well, it was a number I'll say plucked out of the air, but it was a representation of counsel from the defendant that actually made repeatedly. It was just a representation of counsel that they could have perfected this safe harbor payment for a million dollars. I think the plaintiff's counsel actually made their own representation that could have been up to 1.5 million. But that's another problem we have with the record is that it's almost a vacuum. There's no admissible evidence of the value of the claims, the value of the consideration. It's all just representations that ultimately just come from the defendant itself as to whether it has much liability or what the damages or exposure could have been. You cite a lot of out-of-circuit cases to support your position that the settlement shouldn't have been approved. Looking at those cases and looking at the Tenth Circuit Authority, would you agree with me that we take a little different approach and that we have typically been more deferential to the trial court when it approves the settlement? I don't think so. I mean, I think there's a different verbal formula that's used in each circuit. They talk about different factors. Each circuit inevitably breaks it down into certain procedural factors to see whether there was a proper back-and-forth, arms-length negotiation, and whether there's indicia of kind of a fair arms-length transaction occurred. So I think every circuit maybe uses a slightly different formula, but they're all going to the same place, which is the Rule 23e requirement, which is the same for all circuits, that a settlement must be fair, adequate, and reasonable. All the different circuits, I think, are just trying to reach that standard. And I think, especially the adequacy in assessing, and again, this would be the Tenth Circuit's formula, I think it's expressed in the Jones, you know, the nuclear engineering case, if I've got the name right. I think there were three, four factors in that case. Three of them are the procedural type I'm referring to, but the number three factor is, I think, the crucial factor, and I think is always going to be the crucial factor in any settlement approval, which is, is it, is the immediate benefit of the settlement worth the trade-off against the potential, you know, is the bird in the hand worth, you know, the potential for whatever is out in the bush? And any, you know, we do talk about the need, and I do believe, at least implicitly, there's a need to divine what the potential, you know, settlement discount is, how are the claims being discounted. But even if they're not, if it's not being expressed in sort of a mathematical type formula, any sort of evaluation of whether a transaction is fair, you have to look at what's being received and what's being given up. You characterize the other three factors as merely procedural, but, or minimum standard of procedural regularity, that's what the brief says. But it seems to me the second factor and the third factor are related, and especially when you mentioned the concept of the settlement discount, and why wouldn't the question of whether there are serious legal and factual questions be considered? I mean, you're placing the ultimate outcome of the litigation in doubt, something you'd have to factor in, in comparing the settlement against what could conceivably happen down the road. And it doesn't seem like you address that second factor very much in your brief, so I was wondering if you could speak to that. I could, Your Honor, and I think that is absolutely an important factor. Obviously, the, for instance, the greater the defenses that are available or the weaker the claims, the greater the discount that would be fair. But I think it does come back to, again, it can't be considered in a vacuum. The mere existence of conflicts over facts and law is going to be in every case, or it wouldn't be a conflict in the, you know, the parties wouldn't be having a lawsuit in the first place. So, I mean, I think that factor must be meaning to require some kind of assessment of the strengths and weaknesses of the claims and defenses. But, again, that by itself can only be relevant to the extent that it's justifying a discount from what the class could get if they did prevail. So, I think you're absolutely right. If the court decides, I think the court, and this is an area where the court would, I think, have great discretion if it's doing the analysis correctly. If it says, you know, I see that they, I do the math and I see that there's this many work weeks and this many individuals and the penalties. They could get, you know, a very sizable amount of money if they prevailed on their claims, but I also see all these obstacles. And, therefore, a settlement that's a mere 10% of the maximum amount is fair, adequate, and reasonable. And I think that would be a good exercise of discretion. But if the court can't say what they could have gotten if they prevailed, then saying it will be difficult to get an uncertain amount doesn't advance the analysis very much as to whether the settlement is adequate. That's the way I would see that. Again, I think that they're all factors and I think they do interrelate, but that's how I think I would see that factor as relating to the substantive amount of the settlement. Hopefully that answers your question. How common is it for district courts that are considering an approval to rely on declarations and statements of plaintiff's counsel as the district court? Well, I think it's commonplace for, you know, whatever facts they can declare. And it would be entirely proper, especially in a case, I mean, it's certainly appropriate for the plaintiff's counsel to put forth their assessment of the strength of the case and the weaknesses of the case. In a different scenario where a case is further along and there's been actual discovery and investigation done, there'd be a lot more that they could say in their declaration. Here, I think that the plaintiff's counsel declaration, you know, I'd have to describe it as essentially boilerplate, saying we received a large quantity of documents. We looked at those documents and based on that, we believe that the settlement is fair. But there was really no connecting of the dots of, you know, this is the policy that the company has. This is why it could be a violation and this is the penalties to the class that could flow from that. So I think there's nothing wrong with using information, you know, from the parties, from the counsel. It's just a factor of how specific is that information and is it reliable. And again, in this case, I think almost all of the, anything that could be characterized as a fact ultimately just came from C.R. England as a representation and I'd query how, you know, reliable that would necessarily be. Well, if I could real quickly then, I think that's our main problem with the, the main problem, there's others in our brief, but that's the main problem with the settlement. I did want to address the issue of the waiver to make sure I talked about that. They are contending, the parties, that because the written objections of the objectors were actually filed one day after the date in the class notice, that that, you know, should put, basically constitute a waiver and put the objectors out of court. And I would disagree strongly with that. I do think that the standard for preserving a right to appeal and preserving objections is set by Rule 23E, which does require that the approval, the court has to have a final fairness hearing. Any class member is permitted to object at that hearing. And then in the Devlin case, the Supreme Court case, I think originally came out of the Tenth Circuit, but the Supreme Court case that said that objectors have standing said that, in essence, anyone who, well, not in essence said, or, you know, anyone who objects at the fairness hearing and who is bound by the settlement has standing to appeal. And Devlin even dealt with untimely objections, right? I believe that was correct in Devlin. That's correct. And it's not a jurisdictional issue. And frankly, I would argue that it was not untimely because the court's order, if you actually look at the court's order that set the scheduling for the notice and the final fairness hearing, it said that the objection should be served and filed 30 days after mailing of the notice. And I don't think anyone, it occurred to anyone at the time, but Rule 6 should have added automatically three days to that because it was a notice that was going out by mail. So I think even that would add, make it 33 days and make the filing timely. But also add it was served timely and there's no prejudice. The court heard everything at the hearing and through the briefs. I think it, frankly, would have been an abuse of discretion to, you know, bar any consideration of the objections since the court, and I think the court recognized this below, it has a fiduciary duty to the class. You know, it's not an issue of private interest of the objectors. And if an objection, a non-frivolous objection to the settlement is brought to its attention, you know, at or before the hearing, you know, it's not an issue of private interest to the class. So it should, in discharging its duty to the class, it should certainly deal with that to its satisfaction. Counsel, you haven't said anything this morning. Is it still morning? About class certification. I understand you're challenging that. And in responding to this, could you make part of, it seems to me like that, why isn't that the threshold question? Why wouldn't you do that before you do the settlement? Well, the courts have allowed, you know, allowed district courts to certify a case for settlement purposes only or in the process of settling. Other courts have, you know, appellate courts have said that when that happens, the settlement does not apply. The settlement should be subject to a higher standard of scrutiny because the case has not been certified as a class in an adversarial setting. It's basically just coming as a stipulation, you know, for the parties. But Rule 23, and in this case it would be a Rule 23B3 class because we're talking about monetary recovery. Rule 23B3 is, you know, there is no exception just because it's a settlement. Requirements must apply for a settlement class with the exception of the issue of manageability because there's not going to be a trial. So you don't need to worry about manageability. But all the other elements of commonality, typicality, adequacy, numerosity, not a problem here. But, you know, all those issues have to be satisfied in the settlement context just as much and in some cases more than in an adversarial context. And here the district court did not make the proper determinations. We raised, you know, very serious issues about the adequacy and typicality of the named plaintiffs. The fact that it didn't look like they even had causes of action for contract claims that were in the Grady case, you know, the one that those didn't even have, by all appearances, they didn't even have standing. They didn't even have claims. And it's pretty well settled that the named plaintiffs have to at least have the same claim as the people they're seeking to represent. In the course of final approval, no declaration was put forth for any of these named plaintiffs to show that they were adequate or typical or that they met any of these requirements. Again, it was just sort of done on the representations of, again, of the defendant, which I think are not admissible in the context they were put in. And so I just noticed the clock's going up rather than down, so if there's anything else. Thank you. Thank you for your argument. Thank you. Let me start you where we ended on class certification. Sure. As I understand it, the rule requires rigorous analysis of the elements to determine whether a class should be certified. If I were to look for this rigorous analysis from the district court, where would you point me to to find such rigorous analysis? The district court, the requirements for class certification were discussed in the preliminary approval stage. So this occurred – I don't have the exact site, but it's in the motion for preliminary approval, which would be – I can provide that site for the court. But to be clear, the court then, in ruling on that motion, at AA472 of the appendix, ruled that the requirements of Federal Rules of Civil Procedure 23a and 23b3 are satisfied. That's the rigorous analysis? The court did not make more specific findings than that. Does it have to? I don't think it has to in the context of a settlement, as long as the record supports the finding. And here we established that the – and to be honest, we established that the named plaintiffs worked in the same truck driver position, operated under the same piece meal – piece rate type compensation structure, operated under the same meal break policies. But there was potentially a problem in terms of the timing, right? With where their claims arose and how the class was defined, or at least that is what I read to be the argument. I understand it is that they are contesting this contract claim. What he fails to mention is that my – the clients also signed the same contracts. Now, if you work – if you work for a certain amount of time, the contract is satisfied. But it – in all instances, my clients are typical, and the claims they assert are common to the class members, because they all – the primary claim, that they operate under this piece rate system, and therefore were denied rest breaks, and minimum wage compensation is the same for everybody. I was a little confused about the class certification, the way it was handled, and the fact that at some point there was a labor subclass, there was a usury subclass. Did that kind of wash out at the end? Correct. It just – we put those in for purposes of a contested class certification, but when the defendant is no longer contesting certification of the class, we keep the classes – those classes have smaller statutes of limitations, so we take the statute of limitation that applies under the UCL, the unfair competition law, which is four years, and gives us the maximum time. But here it really didn't matter, because we had a prior release from a settlement that the Objectors' Council had negotiated previously, many years earlier, involving the same claims and the same release and providing the same compensation. You know, part of the discussion of the second Jones factor included the problems that may be encountered in securing class certification, and given that that argument was made, and I was wondering, well, then why – if there were going to be all these problems, wouldn't those problems be addressed in terms of class certification at the end of the proceeding here? Well, the problems with class certification, because this is a pre-certification settlement, we have a potential for the class not to be certified in a contested format, and that's common for every case that settles before class certification. These cases settle regularly before class certification, because if you gain class certification, the defendant is in the position of considerable distress, perhaps, and so often defendants are willing to resolve without incurring the cost of fees, without having the onus of a certified class that's now proceeding to trial. But the settlement will bind all of the class members. Correct. And so the same reasons that you want to make sure that the class is properly defined apply in a settlement context as they do in a full litigation context. Yes, they do. In some ways, you could argue it's more important, because it's not going to be tested by the adversary system. But it's clear that you can certify a settlement class under Rule 23, and that it occurs frequently before class certification, and these cannot turn into mini-trials of evidentiary. Courts do not want to see the 11,000 pages of payroll records that we looked at for all the class members. What the Court wants to hear from me is that we analyze them, and we've prepared a damage evaluation, and we see how the class members all operated under the same employment policies. But if, for purposes of this Court, we're supposed to review the decision of the district court, and if the district court doesn't tell us anything about the district court's rigorous analysis, it's very difficult here to figure out what the basis of the Court's certification was. I think there's two sentences. I understand. I don't think anywhere I've seen that the Court's required to make more significant findings. We provided him with the basis for why we thought this certification was appropriate for a settlement class, and he agreed. That's why we're looking at this from a standard of great deference and sound discretion of the trial court, and the reason being is because we're not going to re-weigh these issues. I think the Court was right on point with the second and third factor being related, and that illustrates part of the balancing that the district court does, and that's what the district court is there to do, and he did his job. Could I ask you, on the third factor, where we're doing these valuations, we know that an expert was retained. Did the expert prepare a report? Was a report presented to the Court? Is it in the record? We didn't present the mediation document. We each cited a mediation brief, and that wasn't presented to the Court. What was presented to the Court at the two-hour oral argument that we had was I went through, step by step, how we evaluate each of the claims, and I gave him the maximum exposure that we calculated using our expert and using the payroll records, the employment documents, and the substantial amount of information we have from CR England. But why? I mean, you submitted a declaration, but why? There was no documentation of expert analysis, say, attached to the declaration. The Court pretty much had to go on what you told the Court. That's correct, and I think that's commonplace. I'm unaware of any case in any circuit that requires the Court to conduct a trial with admissible... Well, there's a full-blown evidentiary hearing on the one hand, but there's also providing some support for the valuation on the other. And I think the district court's in a good position to decide whether he needs more information or not. And he asked very probing questions at the hearing, and he was satisfied with the responses. And so that's where we get the rigorous analysis is from the transcript of that hearing. There's a lot of discussion about the claims and the differences, and it's all in there. I mean, it was the longest final approval hearing I've ever attended, and the Court covered everything and considered even the objections in detail. I mean, it went back and forth. I have no doubt that Judge Benson was fully aware of what the claims were about and was satisfied that it could be a settlement. Was he aware of where this $1 million to $1.5 million figure came from for the safe harbor payment? It was absolutely discussed during the hearing, and if I could make my point on that, I thank you for bringing that up. If you look at that statute, Labor Code 226.2, it provides three different methods of calculating what this safe harbor amount might be. And that accounts for some of the differences in defendant's position and our position. We looked at it as a claim that was worth potentially $1 million to $1.5 million at the highest end. Defendant looked at it as a claim that was worth slightly under $1 million, and that's because of the varying ways you can calculate what amount is due. And, in fact, the constitutionality of that provision is actually in the Court of Appeal in California. It's a really unique, novel issue that came up in a lot of these cases, but there's a lot of confusion over what exactly needed to be paid. And if it had been paid, and they didn't comply with some of the other requirements, did they lose their safe harbor defense? It's a voluntary payment that just provides them for defenses to most of the claims in this case, if they did exercise it. So it was an important consideration in 2016 at the time. When the payments aren't made, it's not going to be affecting the settlement any longer because there was no payment made. So the credit provision was just a prophylactic means of protecting the defendant's rights to that issue. Was the deadline for the payment or payments driving the schedule here? It definitely made us work quickly on this, on getting the papers to the court. Everything else, the notice period and all that, that was all normal. The only thing that was hurried was, on our side, doing our work and putting this to the front of the hopper because time was of the essence and it was important. I'd like to secede some of my time to my counsel for response because I know he had some points he'd like to make. Thank you, Your Honors. May it please the Court, Drew Hanson on behalf of Defendant Sierra England. Your Honors, I'd like to address a few points that have been discussed previously. First, with respect to the certification issue, I think it's important to remember, number one, that that's an abuse of discretion standard. The Court's precedent from the Tenth Circuit looking at the Valerio case, the Court's precedent is it clear that at the class certification stage, a district court must generally accept the substantive non-conclusory allegations of the complaint as true. I think here, if you look at the allegations in the complaint, the second amendment complaint that's on file, clearly the named plaintiffs alleged that they had this contract and the Court could have relied on that alone to have certified the class. Also in the record, Defendant Sierra England submitted a declaration from Gary Thompson in which he identified that all three of the named plaintiffs attended the truck driving school and at least one of the named plaintiffs, Jonathan Mitchell, had signed a similar contract and that contract actually ran into the period at issue here. It's very important in the case law, too, that with respect to class certification, the claims do not have to be identical. It's merely a co-extensive relationship and that's a very kind of liberal standard, especially when we're talking about the abuse of discretion standard with which this panel has... Would Sierra England have opposed class certification? We would certainly have opposed class certification, but the outcome of that was uncertain. In fact, it's interesting that the objectors here are making arguments with respect to class certification because in their parallel graded case, when they learned of the settlement, the first step that Mr. Vlandek took was to file a motion for class certification. We stayed that proceeding, but he was arguing at the time that a class could be certified. Certainly, we have case law that we've cited. In the Grady case. So while he's saying a class couldn't be certified, in his case, using a similar plaintiff that had not completed the contract and had not been charged anything under it, he was arguing that a class could be certified there. So I think that it's informative for this court to understand that Mr. Vlandek believed that a class could be certified. And there are multiple reasons why certification exists here. I think the court did what was necessary. Certainly, it could have maybe added some more language, but in terms of looking at the evidence before it, the court found that all of the certification requirements were met. And I think that when you look at it through the lens of the abuse of discretion and the coextensive requirements that this court has repeatedly said is the standard, I believe that the certification hurdle is easily satisfied. Why should we have confidence in the $1 million figure that your client came up with for the safe harbor? You should have confidence in that number because we looked at that number very closely. We looked at the wages that had been earned. All we have is the number. I mean, why doesn't anybody show their work? Well, in terms of that analysis, Your Honor, with respect to the work, it's a very voluminous spreadsheet that has all sorts of data. We're talking about 6,000-plus class members. The calculations are very complicated in terms of how you arrive at that number. It's a 4% of gross wages, but then there's a credit that can be given for the up to 1% if you paid some additional nonproductive time on an hourly basis. In fact, the statute is so complicated that it was challenged by a case, Nisei Farmers League, that's still pending in California. The Nisei Farmers League challenged that calculation. It's so complicated. Why isn't that even more reason to show that the number was correctly arrived at? Well, and I think here one of the things that is relevant is at most the top number could have been 1.5. We believe with the credit, the 1% reduction, and calculating the number correctly, it would be a million dollars or lower, but from both plaintiff's counsel's perspective, plaintiff's counsel argued for a higher number. Obviously, they are taking a more liberal view as to what should be counted. That was the maximum, and it was also not a guarantee that the safe harbor would be paid. Certainly, we were considering that as an option, and it was a possibility, and it was one of the considerations in the case, but I think this is somewhat similar to the Tennille case that this court decided. In the Tennille case, you had a situation where, this is Tennille versus Western Union, the class members had paid a wire, an amount of money to wire, and for whatever reason, those wires weren't completed. Western Union had a practice of not telling the class members that the wire wasn't completed until it was forced to do so by state law, and then a lot of that money would escape to the state. Ultimately, that case settled after coming up to appeal on the Tenth Circuit, and the money that was used to fund that settlement was $135 million that the class members had paid to Western Union, and the court said that even though that money could have reverted back had the class members claimed it, the fact that only 15 percent of them were doing it, the settlement provided a guarantee, and here, the $1.7 million that the class is ultimately going to recover is a guarantee. The safe harbor is something that was contingent. We had other very valid defenses. Now, I appreciate your recognition, Judge Matheson, of the connection between the second factor and the third factor. The second factor- Okay, counsel, we're over time, so if you can try to compress the rest of this. I was just going to say that there were other significant defenses in terms of the individual arbitration agreements, which, again, were relevant in the Tennille case, and one of the reasons why the court approved that settlement. There was the federal preemption defense that could have wiped this out. You take all those factors, and certainly class certification was an element, but it was only one of the defenses. Thank you, Your Honors. Any further questions? I think that'll do it. Thank you, Mr. Hanson. Do we owe Mr. Van Vleck a little time? I think we can- well, didn't we just go over three minutes? Let's take another minute if you need it. I would like to just quickly- Just quickly on the issue of class certification, I think there's definitely a difference between a rigorous analysis and just a recitation of the elements. And I think, frankly, I don't even think it was a recitation of the elements, and I don't think the oral argument will bear out that there was any real discussion of class certification. The court raised an important issue, too, about class certification, mentioned the issue of subclassing, which is something that, especially given the nature of the different types of claims, there could potentially be real conflicts between the different types of people in this class. We raised that below. For instance, the people with contract claims, who we're primarily interested in, there may be people who don't have those contract claims. And also the safe harbor provisions, these are being taken away from a certain group of people that would have received those, and that is a group that is something less than the whole class. So there's probably a very good argument that there should have been- as to what they should or should not have been getting. And under this settlement, they just get one undifferentiated amount. And that's exactly what class certification is for, is to bring those issues to the surface and decide whether subclassing is necessary, whether there were conflicts. The fact that the main plaintiffs, we say in this case, didn't even have standing, puts them in conflict with the people who did have real good contract claims. So I think that's important. Counsel, I think we've probably reached the end of the time. And I appreciate your argument. I appreciate the counsel's argument on the other side. And the case will be submitted. Counsel are excused.